IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN, B.**[1], <br><br>          Plaintiff, <br><br> v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br>          Defendant. | Case No. 3:19-cv-1930-SI <br><br> **OPINION AND ORDER** |

Kevin Kerr, SCHNEIDER, KERR & ROBICHAUX, P.O. Box 14490, Portland, Oregon 97293. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

John B. (Plaintiff) brings this action pursuant to 42 U.S.C. § 415(g) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Plaintiff's application for disability insurance benefits under the Social Security Act (Act). For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for disability insurance benefits on August 23, 2017. Plaintiff originally alleged a disability onset date of December 30, 2015 but amended his alleged disability onset

date to September 30, 2014 at the hearing. Plaintiff was born on October 2, 1955 and was 58 years old as of the alleged disability onset date. Plaintiff's claim was denied initially on December 18, 2017, and upon reconsideration on February 12, 2018. Plaintiff filed a written request for a hearing and appeared and testified at a hearing on May 28, 2019.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

>     §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

As a preliminary matter, the ALJ determined that Plaintiff met the insured status requirement of the Act through September 30, 2014. AR 15. At step one, the ALJ determined that Plaintiff was not engaging in substantial gainful activity (SGA) during the period of alleged onset (September 30, 2014) through his late date insured (September 30, 2014). AR 15. At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. The ALJ found that Plaintiff's other medically determinable impairments—depression, anxiety, ankle fracture—did not constitute severe impairments. AR 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. AR 18. The ALJ next found that Plaintiff retained the RFC to perform

> medium work as defined in 20 CFR 404.1567(c) with an ability to lift and carry 50 pounds occasionally and 25 pounds frequently. In addition, [Plaintiff] was limited to sitting, standing, and walking each for 6 hours. Pushing/pulling is also limited to as much as [Plaintiff] can lift and carry.

AR 18. At step four, the ALJ found that Plaintiff could perform past relevant work as an appraiser. AR 22. Alternatively, at step five the ALJ also found that there are jobs existing in significant numbers in the national economy that Plaintiff could perform, including order selector (DOT # 922.687-058), laundry worker (DOT # 361.685-010), and food tray assembler (DOT # 319.484-010). AR 23. The ALJ thus found that Plaintiff was not disabled under the Act at any time through September 30, 2014. AR 24.

**DISCUSSION**

Plaintiff appeals the ALJ's decision on three grounds. First, Plaintiff argues that the ALJ erred in determining at Step Two that Plaintiff's only severe impairment was degenerative disc disease. The Commissioner responds that Plaintiff fails to establish harmful error in the ALJ's determination of Plaintiff's severe impairments because the ALJ's decision was proper given the lack of evidence supporting the severity of his other impairments and because the ALJ considered the effect of Plaintiff's other medically determinable impairments at later steps.

Second, Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony. The Commissioner responds that the ALJ's decision on Plaintiff's symptom testimony was proper because Plaintiff's allegations were inconsistent with his work activities and the medical record. The Commissioner adds that Plaintiff failed to produce medical evidence sufficient to show a disability during the time period at issue.

Third, Plaintiff argues that the ALJ improperly rejected the medical opinion by Keith Bachman, MD, Plaintiff's primary care provider. The Commissioner responds that the ALJ reasonably evaluated Dr. Bachman's opinion based on its supportability and consistency with other evidence.

**A.  Step Two: Severe Impairments**

At step two, the claimant bears the burden of establishing that he has a severe impairment by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923). Thus, if the

ALJ determines that a claimant has any severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. Social Security Rule ("SSR") 96-8p, *available at* 1996 WL 374184; *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). When an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). A diagnosis alone does not establish the severity of an impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The ALJ found that Plaintiff's only severe impairment was degenerative disc disease. The ALJ evaluated Plaintiff's claims that pulmonary disease, herpes zoster keratoconjunctivitis, ankle fracture, right inguinal pain/abscess, and acute sinusitis were severe impairments. Because the ALJ found that these impairments, singly or in combination, only caused transient and mild symptoms and limitations, were well-controlled with treatment, did not persist for twelve continuous months, did not have greater than a minimal limitation on Plaintiff's physical or mental ability to perform basic works tasks, or were otherwise not adequately supported by medical evidence, the ALJ found that they were not severe.

The ALJ separately considered Plaintiff's depression and anxiety along the "Paragraph B" four areas of mental functioning: 1) understanding, remembering, or applying information, 2) interacting with others, 3) concentrating, persisting, or maintaining pace, and 4) adapting or managing oneself. The ALJ found that Plaintiff's experience in 2012 travelling to sell glass memorabilia demonstrated that he had no problem with area 1, understanding remembering and applying information. Plaintiff's history of sales further showed that he did not

have more than a mild limitation in area 2 (interacting with others) and area 3 (concentrating, persisting, or maintaining pace). The ALJ further supported finding a mild limitation in interacting with others, because despite a diagnosis of major depression, treatment notes from December 2011 showed that Plaintiff's affect was appropriate and usual, and that Zoloft had helped treat his mood and anxiety. The ALJ found that Plaintiff had no limitation in area 4 (adapting or managing oneself) because Plaintiff was able to use opioids on a stable basis at the time of alleged disability onset, and was able to split his time between Oregon and California. These behaviors showed that Plaintiff was able to adapt to changes and manage himself in a normal manner.

Plaintiff argues that the ALJ should have found that his anxiety, depression, and history of ankle fracture were severe impairments because the treatment records establish that these impairments significantly limited his ability to work. With respect to Plaintiff's depression and anxiety, he argues that the ALJ focused only on instances of positive mental health prognosis, while overlooking records of his longstanding suicidal thoughts, worsening of his mood over time, little interest or pleasure in daily life, trouble sleeping, and poor self-image. With respect to his ankle fracture, which occurred in 2005, Plaintiff argues that medical records show that he required cortisone injections and opioid pain medications to cope with his ankle injury, and that this form of treatment evidences the severity of the impairment.

The Commissioner responds that the ALJ's finding that no other impairments were severe was correct and also that any error that might be present was harmless because the ALJ considered the effects of the ankle injury, depression, and anxiety in later steps. Specifically, the Commissioner argues that Plaintiff has not provided any evidence supporting the severity of his ankle injury that is recent enough to be relevant. Plaintiff relies on treatment notes from 2011,

three years before the date of onset, when he received a cortisone injection and his doctor suggested weaning off of opioids and weight loss. The Commissioner argues that the ALJ reasonably inferred that the lack of treatment in 2014 for a 2005 injury suggests that the impairment was not severe. Regarding Plaintiff's depression and anxiety, the Commissioner argues that Plaintiff only cites to treatment records reiterating his own subjective reports of depression from 2011 to 2013 and does not challenge the ALJ's finding that his mental health impairments caused only mild limitations in the four specific functional areas.

The ALJ made specific findings supported by substantial evidence about why Plaintiff did not exhibit the four functional limitations required to find that a mental impairment was severe. Plaintiff's evidence about his own subjective experience does not contradict the ALJ's findings about Plaintiff's functional abilities, which are grounded in substantial evidence from shortly before and during the time of disability onset.

The ALJ did not make any findings specific to Plaintiff's ankle injury when assessing whether his medically determinable impairments were severe. Any error, however, was harmless, because the ALJ considered the entire medical record, including treatment notes about Plaintiff's ankle injury, in the ALJ's assessment of Plaintiff's RFC when evaluating the symptom testimony and medical opinion evidence.

## B. Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

      The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

PAGE 11 – OPINION AND ORDER

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]". AR 19-20. The ALJ specifically discussed Plaintiff's degenerative disc disease and ankle injury, and cited evidence of Plaintiff's work activities and positive treatment prognosis. The ALJ stated that Plaintiff's former work as a travelling glass memorabilia salesman in 2012 and intermittent work as a flagger in 2014 around the time of alleged disability onset contradicted Plaintiff's symptom testimony. Looking at the treatment record, the ALJ noted that treatment notes from July 2013 showed the Plaintiff was "doing pretty well," that medication had helped him function, and that his mood and anxiety had improved since earlier examinations. Without connecting it to his discussion of Plaintiff's ankle injury specifically, the ALJ briefly mentioned Plaintiff's release to light work in 2005 in further support. Looking past the date of onset, the ALJ noted that in 2017, three years later, Plaintiff's treatment notes showed that he felt like he was doing fine.

Plaintiff argues that the reasons the ALJ gave for rejecting Plaintiff's symptom testimony were not clear, convincing, and supported by substantial evidence. During the hearing, Plaintiff testified that he cannot stand for more than a couple hours and he has severe anxiety attacks. AR 35-36. He also testified to sciatica and shooting pains that sometimes made him unable to climb stairs or stand for more than 20 minutes. AR 40. Plaintiff argues that there are other aspects of the medical record showing that he was disabled by his symptoms, and the ALJ cherry-picked the positives while ignoring the negatives. Plaintiff points to one such example, when in a September 2014 visit cited by the ALJ that included the comment that Plaintiff was "doing well," Plaintiff has also stated that his pain level was at a 6 out of 10 during the visit and

had been at an 8 out of 10 in the week prior. Plaintiff also argues that the ALJ did not directly explain how Plaintiff's sales job in 2012 or his flagger job in 2014 actually contradicted Plaintiff's testimony.

The Commissioner responds that the ALJ's findings were sufficiently specific and supported by substantial evidence. The Commissioner contends that the ALJ considered that Plaintiff worked some amount in 2012 as a travelling glass salesman and in September 2014 as a flagger. The ALJ also considered the treatment record, which showed that medications and conservative treatment that controlled Plaintiff's symptoms.

The Commissioner suggests that conservative treatment was a factor in the ALJ's decision. This reason, however, was not mentioned by the ALJ. The Court may only consider the reasons given by the ALJ in his opinion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Conservative treatment will not be considered as one of the ALJ's reasons for not giving full credit to the limitations testified-to by Plaintiff.

Considering the totality of the evidence to determine whether Plaintiff had established that he was disabled on September 30, 2014, without a robust body of evidence to rely on, the ALJ gave specific, clear, and convincing reasons based in the medical evidence before him. While the discussion of the two jobs is brief, there is minimal and conflicting information in the record. Plaintiff shared in the hearing that he continued working as a flagger around the date of onset and afterward, whenever he could get work doing it. He also testified, however, that on the date of onset he would not have been able to stand as long as the flagger job required. Plaintiff's

testimony is seemingly contradictory. The ALJ's finding that Plaintiff's ability to do the flagger job around his date of onset undermined the severity of his symptom testimony is valid, especially considering the inconsistencies in the record.

The ALJ's findings about the medical record are also valid. The ALJ is tasked with resolving ambiguities and conflicts in the medical record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "Where the evidence can reasonably support either affirming or reversing a decision, we [the court] must not substitute our judgment for that of the ALJ." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation, internal quotation marks, and brackets omitted). There is relatively little information in the record, and the ALJ identified multiple instances of positive prognoses that undermine the severity and extent of Plaintiff's symptom testimony. Although the ALJ may not cherry-pick isolated instances of improvement, there is nothing to show that the ALJ's findings go against the record as a whole, especially when considering the record in the time period more closely surrounding the date of onset. There is evidence to support both Plaintiff's and the ALJ's interpretation. When the ALJ's interpretation is a reasonable interpretation of the record, the Court cannot substitute its own judgment. The ALJ did not err in giving less than full weight to Plaintiff's subjective symptom testimony.

**C.  Dr. Bachman's Medical Opinion Evidence**

Plaintiff filed his application for benefits on October 2, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of

PAGE 14 – OPINION AND ORDER

medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability and "consistency" of the opinions, followed by additional sub-factors,[3] in determining how persuasive the opinions are. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and the source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(b)(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Plaintiff argues that the Commissioner does not have the authority to abandon giving priority to treating physicians because the Act itself emphasizes the treating relationship. Plaintiff asserts that this Court remains bound by Ninth Circuit precedent requiring that the

---

[3] The secondary factors include: relationship with claimant; specialization; and "[o]ther factors." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Commissioner give greater weight to treating physicians than reviewing physicians, and holding that a reviewing physician's opinion alone cannot serve as substantial evidence to discount the opinion of a treating physician. The Court need not decide this issue, however, because under either standard, the ALJ did not err in considering Dr. Bachman's opinion.

The ALJ found that Dr. Bachman's opinion was not persuasive because it lacked supportability and consistency. Dr. Bachman, writing in 2017 about limitations as of September 2014, did not identify what objective evidence he relied upon in making his findings, did not know how long Plaintiff could stand, walk, or sit at once or during an eight-hour workday, and the check-box form had little to no detail provided in Dr. Bachman's own words. The ALJ also found that the opinion was inconsistent with other evidence from other sources, namely the state agency's medical consultant opinions. In contrast, the ALJ found that four state agency medical consultant opinions were more persuasive due to their supportability and consistency. This met the standard for discounting Dr. Bachman's opinion under the old "specific and legitimate" standard or the new "supportability and consistency" standard.

Plaintiff argues that this Court should apply the "clear and convincing" standard for rejection of a medical opinion that is not contradicted by another opinion, despite the revised regulations governing the ALJ's evaluation of medical opinion evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (noting that an ALJ must state clear and convincing reasons to "reject" an uncontradicted opinion of a treating or examining doctor). Even if the new regulations did not apply, Dr. Bachman's opinion is contradicted by other medical opinions, and the clear and convincing standard Plaintiff advocates for is not applicable regardless of when Plaintiff filed his application.

Plaintiff also argues that the ALJ's findings on the supportability and consistency of Dr. Bachman's opinion were invalid because treatment notes support Dr. Bachman's findings. Dr. Bachman's treatment notes, however, can reasonably be interpreted to show chronic, generally stable conditions with flare-ups. For example, Dr. Bachman noted on December 12, 2012, that Plaintiff was "doing fine," his "back [was] on track with pain medications," and he was "able to work due to these medicines." AR 568. On July 8, 2013, the chart notes reflect that Plaintiff "has been doing pretty well," his "mood improved from prior," and his "pain management stable," and the "medicine continues to help him function." AR 566. On September 8, 2014, Dr. Bachman reported that "generally [Plaintiff] has been doing well. He is noting [pain] intermittently but generally feels [it] is well controlled adequate[ly]. He's been using his opioids in a stable basis." AR 564. On December 5, 2014, Dr. Bachman reported: "pain management is stable, mood doing better then [sic] he had been, no other issues today." AR 564. For some of these visits, Plaintiff self-reported several days of depression, little interest in doing things, and high levels of pain and affected sleep. But, as discussed above, it is the ALJ's responsibility to resolve conflicts and ambiguities in the evidence, and it was rational for the ALJ to find Dr. Bachman's opinion not supported by substantial evidence in the record. Dr. Bachman's treatment notes do not clearly support his opinion.

The ALJ evaluated Dr. Bachman's opinion in conjunction with multiple opinions from state agency medical consultants and explained his evaluation of the persuasiveness of Dr. Bachman' opinion under both the supportability and consistency metrics. For supportability, the ALJ found that Dr. Bachman's opinion did not state the objective medical evidence it relied upon, was only in check-box form, and did not give information about the ability to sit, stand, or walk. The regulations state that the supportability factor includes assessment of the medical

source's explanation for the opinion. Dr. Bachman's lack of explanation, therefore, is substantial evidence that the opinion is not well-supported.

For consistency, the ALJ found that Dr. Bachman's opinion contradicted four different medical opinions issued by the state agency's consulting experts. All four of these opinions found that there was insufficient evidence to establish Plaintiff's physical or mental disability at the date of onset. The ALJ's findings on consistency are therefore supported by substantial evidence where consistency depends on the findings in other medical opinions, and the ALJ explained how the other medical opinions were inconsistent with Dr Bachman's opinion. The ALJ did not err in analyzing the persuasiveness of Dr. Bachman's opinion.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled under the Act.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge